NICHOLAS A. TRUTANICH
United States Attorney
Nevada Bar Number 13644
PETER WALKINGSHAW
Assistant United States Attorney
400 South Virginia, Suite 900
Reno, Nevada 89501
775-784-5438
Peter.Walkingshaw@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:20-cr-00026-MMD-WGC |
| Plaintiff, | **Government's Response to Defendant's Notices of Supplemental Authority [ECF Nos. 44, 45]** |
| v. | |
| GUSTAVO CARRILLO-LOPEZ, | |
| Defendant. | |

On Friday January 29, 2021, Defendant filed two Notices of Supplemental Authority. ECF Nos. 44, 45. Defendant appears to now argue that the Immigration and Nationality Act of 1952 (the "1952 Act") was motivated by independent racial animus, whereas all of his prior briefing relied on an assertion that alleged racial motivations for the Undesirable Aliens Act of 1929 continued to "taint" subsequent legislation by Congress regarding the criminalization of illegal reentry. Neither of Defendant's Notices provide support for this new position. Because Defendant has fails to establish that the illegal reentry provisions of the 1952 Act – as well as any of Congress' subsequent revisions and readoptions of those provisions – were motivated by racial animus, the motion should be denied.

Defendant's first Notice of Supplemental Authority appears to argue that racial animus held by Senator Patrick McCarran against Jewish people should lead the Court to conclude that the illegal reentry provisions of the 1952 Act and Congress' many subsequent revisions and readoptions of those provisions are tainted by animus against Latinx people. Defendant is incorrect for two reasons:

First, in its repeated reconsideration, revision, and repassage of the illegal reentry statute, Congress itself has explicitly considered the views of Senator McCarran with respect to legal and illegal immigration from Mexico, and found that he was *in favor of condoning undocumented immigration over the southern border*. As part of the process that led to the passage of the Immigration Act of 1990, the Congressional Research Service provided the Senate Judiciary Committee's Subcommittee on Immigration and Refugee Affairs a study of immigration law and policy from 1952 to 1986.[1] That report found that those who generally supported greater restrictions on immigration in the period nonetheless had a "relatively unconcerned attitude toward both legal and illegal Mexican temporary workers," and that Senator McCarran himself defended illegal immigration over the southern border on the grounds that the process of legal immigration for Mexican agricultural workers involved "too much red tape."[2] It therefore cannot be argued that McCarran's attitudes towards Mexican immigration generated a readoption of the criminal illegal reentry law that was driven by

---

[1] *U.S. Immigration Law and Policy 1952-1986: a Report Prepared for the Use of Subcommittee on Immigration and Refugee Affairs, Committee on the Judiciary, United States Senate*, 25 (December 8, 1987). While this document was cited in the government's response to Defendant's Motion to Dismiss, and is a part of the congressional record, a courtesy copy is attached hereto as **Exhibit A**. It must also be noted that this report is further evidence of Congress' awareness of the influence of the eugenics movement on the Undesirable Aliens Act of 1929 and its reaffirmance of the criminal provisions for illegal reentry notwithstanding that history. *See id.* at 4.

[2] *Id.* at 25.

racial animus. Nor can it be argued that Congress, in reassessing and readopting the illegal entry statute in 1990 with an increased fine provision,[3] did not consider the views McCarran and other supporters of the bill held regarding immigration across the southern border.

Second, to the extent Defendant argues that he has an equal protection claim arising from McCarran's support for the system of immigration quotas by national origin that the law modified, and to which President Truman objected, those quotas do not and would never have applied to him or any Latinx person from the Western Hemisphere. The 1952 Act continued the existing policy of exempting citizens of countries from the Western Hemisphere, including Mexico, from numerical restrictions on immigration.[4] Moreover, the national origins quota system has not been a part of American immigration law for over fifty years, as it was done away with altogether by the Immigration and Nationality Act of 1965.[5]

Finally, in the second Notice of Supplemental Authority Defendant filed on January 29, Defendant has submitted the committee report of the Senate Judiciary Committee regarding the inclusion of a criminal illegal reentry in the 1952 Act. ECF No. 45. Contrary to Defendant's assertions, this document supports the government's position that Congress acts deliberately when it passes legislation, even when that legislation readopts or affirms existing law, and even when the legislation not actively debated on the floor of the House or the Senate. While the Defendant has referred to the inclusion of the illegal reentry provision in the 1952 Act as a "pro forma reenactment," the document submitted makes clear that the

---

[3] Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (increasing the fine provision of section 1326).
[4] *See* Ex. A at 5-6 (noting the "continued absence of a numerical restriction on Western Hemisphere immigration" following the passage of the 1952 Act).
[5] *See* Ex. A at 55-56 (noting that per the Immigration and Nationality Act of 1965's revisions to existing immigration law, the complete abolition of the national origins quota system became effective on July 1, 1968).

Judiciary Committee was actively examining the issue. The Committee took testimony from witnesses and received commentary from INS field offices on the issue of criminal immigration law. And while it was apparently "suggested by many" that the penalties for these offenses be increased due to difficulties in enforcement and prosecution at the time, the Committee ultimately opted to recommend keeping the law as it is. Moreover, contrary to Defendant's assertions, the commentary does not "refer[] exclusively to Mexicans." Indeed, it does not refer to Mexican people at all. Rather it refers to "difficulties encountered in getting prosecutions and convictions, especially in the Mexican border area," as contrasted with other areas such as the East Coast where prosecutions were typically more successful. The authority submitted by the Defendant here not only fails to evidence racial animus, but also demonstrates thoughtful consideration on the part of Congress in readopting a criminal provision to deter illegal reentry. The government respectfully submits that for these reasons, and those contained in its response to Defendant's Motion to Dismiss, that the Motion should be denied.

Respectfully submitted this 1st day of February, 2021.

NICHOLAS A. TRUTANICH
United States Attorney

*s/ Peter Walkingshaw*
PETER WALKINGSHAW
Assistant United States Attorney